UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD DIAZ,<br><br>    Plaintiff,<br><br>    v.<br><br>DR. MICHAEL C. SAYRE; et al.,<br><br>    Defendants.<br>_____/ | No. C 12-5895 SI (pr)<br><br>**ORDER OF SERVICE AS TO SOME DEFENDANTS AND TO SHOW CAUSE AS TO SOME OTHER DEFENDANTS** |

## INTRODUCTION

Ronald Diaz, a California inmate currently housed at Pelican Bay State Prison, filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983, complaining of acts and omissions that occurred from 1998 through the present. The complaint is now before the court for review under 28 U.S.C. § 1915A.

## BACKGROUND

The very well-organized and thoughtful complaint concerns the response of various prison officials to Diaz's hepatitis C and thrombocytopenia. Diaz alleges the following:

At Diaz's request, he was tested for the human immunodeficiency virus (HIV) and hepatitis A, B, and C viruses in January 1998 at the California State Prison - Solano. Defendants Jordan, Bunton and Rosenthal were involved with the test. In the ensuing six months, Diaz received no notice from them about the test results, and assumed the results were negative. He received no treatment.

In February 2005, Diaz was transferred to Pelican Bay to serve an indeterminate term in the SHU. No official reviewed his medical file to determine if he had any infectious or chronic health problems.

On or about April 11, 2006, Diaz submitted a request to see a doctor because he was losing weight and feeling ill. He was interviewed by Dr. Rowe, and told her he had previously been tested for HIV and hepatitis, but never received any results and wanted another test. He was tested on April 18, 2006, and was told that the results were non-reactive for HIV and reactive for hepatitis C. Diaz contends on information and belief that he had hepatitis C when tested back in 1998.

On May 22, 2006, the hepatitis committee (i.e., Sayre, Thomas and Rowe) approved a liver biopsy for Diaz.

On June 9, 2006, Diaz was diagnosed with thrombocytopenia, a "persistent decrease in the number of platelets in the blood that is often associated with hemorrhagic conditions," and enrolled in the chronic care program by Dr. Rowe. Complaint, ¶ 29. Diaz alleges, on information and belief, that this was a longstanding illness that would have been apparent had anyone reviewed his medical records upon his arrival at Pelican Bay in 2005.

On July 10, 2006, blood tests were done in preparation for the liver biopsy. Diaz alleges, on information and belief, that a liver biopsy is not needed for patients who have HCV genotype 2b. Dr. Rowe failed to inform Diaz that genotype 2b patients do not need a biopsy, so Diaz did not request lab work to determine his HCV genotype. On July 17, 2006, Dr. Rowe informed the hepatitis committee that the liver biopsy needed to be cancelled due to low platelets and referred Diaz's case to the hematologist for evaluation and recommendation. The liver biopsy was cancelled on August 2, 2006, reportedly for safety reasons.

On September 26, 2006, Diaz met with the hematologist, Dr. William Benis. Dr. Benis made reasonable recommendations for treatment of the hepatitis, including the need to determine Diaz's genotype. These recommendations were ignored by Drs. Sayre, Thomas, Rowe, and Wahidullah. Dr. Wahidullah, his new primary care provider, made a note that the hepatitis committee determined that due to his persistent thrombocytopenia, Diaz did not meet the criteria

for treatment, even if a liver biopsy could be performed. The disregard of Dr. Benis' recommendations by Drs. Sayre, Thomas, Rowe and Wahidullah would cause Diaz irreparable harm and lead to end stage liver disease ("ESLD").

On April 26, 2007, lab work was done that showed Diaz's platelets had risen to a level that met CDCR's criteria for treatment. Drs. Sayre, Thomas, Rowe and Wahidullah did nothing about the result. On July 9, 2007, lab work was done that again showed Diaz's platelets had risen to a level that met CDCR's criteria for treatment. Dr. Wahidullah made a note that the patient needed a repeat lab test with platelets within range and then would refer him to the hepatitis committee for evaluation for a biopsy, and would obtain an ultrasound for evaluation. Wahidullah's failure to note the April 26, 2007 platelet level caused Diaz to be denied treatment, apparently because, by the time the lab work was done again on October 2, 2007, Diaz's platelets had dropped below the level that met CDCR's criteria for treatment.

On or about February 28, 2008, Risenhoover became Diaz's new primary care provider.

On December 19, 2008, lab work was done and Diaz's genotype was determined to be "2b." As a genotype 2b patient, he had not required a liver biopsy prior to treatment because genotype 2b patients had a high response rate to treatment. Diaz contends that Dr. Benis' September 26, 2006 recommendations had posed the question of Diaz's genotype, but Drs. Sayre, Thomas, Rowe and Wahidullah had never ordered the test.

While under Risenhoover's care, Diaz inquired about the possibility of a liver transplant, but was told he did not fit the criteria. Diaz alleges, on information and belief, that he did fit the criteria for referral for a liver transplant.

On or about March 9, 2009, Dr. Williams became Diaz's new primary care provider.

On March 15, 2010, Diaz sent a request for care for a recurrent rash on his legs. Diaz also wrote that he was supposed to be on chronic care due to his hepatitis C and had not seen a doctor in over a year. Dr. Williams treated the rash as a dermatological disorder, and misdiagnosed herpes and facial dandruff, when the underlying disorder was a manifestation traceable to the hepatitis.

On March 24, 2010, Diaz underwent an ultrasound. The report for the ultrasound showed

"marked splenomegaly slightly increased in size since August 16, 2007," probable varices, and no liver masses. *Id.* at ¶ 53. This record did not support the decisions of Drs. Sayre, Thomas, Rowe, Wahidullah to deny treatment based on cirrhosis.

On September 28, 2010, Diaz filed an inmate appeal about his overall chronic care and medical treatment.

On April 28, 2011, Dr. Adam made progress notes in Diaz's record. He noted, among other things, that he had referred Diaz to see a hepatologist for possible treatment and to be put on a heart healthy hepatitis diet, but Dr. Sayre denied the requests.

A medical classification chrono was written on May 5, 2011 recommending Diaz's transfer to California State Prison - Sacramento, apparently because Pelican Bay was a basic care institution and CSP - Sacramento SHU was a medical facility capable of caring for ESLD patients. The transfer was denied in a chrono signed by classification staff representative M. Scott, who denied the transfer on the basis of Diaz's threat to security due to his gang association and because there was no indication as to why Pelican Bay could not continue to address the inmate's medical needs. Diaz filed an inmate appeal; the inmate appeal was denied by M. A. Cook for warden Lewis on August 22, 2011, who also cited Diaz's gang association as the reason for denying the transfer and appeal. On December 22, 2011, defendants Tileston and Foston denied Diaz's inmate appeal about the transfer, writing that Diaz had not demonstrated that he was not receiving appropriate medical care at Pelican Bay.

On August 29, 2012, Diaz sent a request to Dr. Sayre to be placed on a liver transplant list. Dr. Sayre responded that CDCR had no transplant list, and that Diaz did not qualify for a referral to the CDCR's current contractor for solid organ transplants. In that same request, Diaz asked for the hepatitis committee again to refer him for a transfer to CSP - Sacramento. Dr. Sayre responded that the medical staff had done what it could, apparently meaning that it was up to custody staff to make the ultimate determination about a transfer.

On September 20, 2012, Diaz met with health care staff to discuss end of life status. He again requested to be referred for a liver transplant and a transfer. Dr. Thomas responded that "No one is getting transplants, and no one is getting transferred. Once your illness gets worse,

4

you will be moved over to CTC and housed there until death." Complaint, ¶ 75.

**DISCUSSION**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id*. at § 1915A(b)(1),(2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

A.   The Pelican Bay Defendants

Deliberate indifference to a prisoner's serious medical needs amounts to the cruel and unusual punishment prohibited by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Liberally construed, the complaint states a § 1983 claim for deliberate indifference to plaintiff's serious medical needs. A claim is stated against Dr. Michael Sayre, Dr. Linda Rowe, Dr. L. Thomas, primary care provider Sue Risenhoover, Dr. Wahidullah, and Dr. Claire Williams based on their alleged acts and omissions in responding to Diaz's hepatitis and thrombocytopenia. A claim is stated against classification staff representative M. Scott, appeals examiner C. Tileston, and chief of inmate appeals D. Foston, who allegedly took part in the

5

1 decision to deny the medical staff's request for Diaz to be transferred to CSP - Sacramento. *See*
2 *generally*, *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (en banc) (summary judgment
3 should not have been granted to defendants where plaintiff presented evidence that prison
4 officials failed and refused to follow doctor's orders for a liquid diet for plaintiff whose mouth
5 had been wired shut to treat a broken jaw).

7 B.     <u>Statute Of Limitations Problem For Claims Against CSP-Solano Defendants</u>
8      A "statute of limitations" sets the amount of time within which an action must be brought
9 for a wrong. It concerns the staleness rather than the quality of a claim or complaint. Section
10 1983 does not contain its own limitations period, so the court looks to the limitations period of
11 the forum state's statute of limitations for personal injury torts. *See Elliott v. City of Union City*,
12 25 F.3d 800, 802 (9th Cir. 1994). California's statute of limitations period for personal injury
13 torts is two years, and the statute of limitations period for § 1983 claims is two years. *See*
14 *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); Cal. Civ. Proc. Code § 335.1; *Elliott*,
15 25 F.3d at 802. A claim accrues when the plaintiff knows or has reason to know of the injury
16 which is the basis of the action. *See TwoRivers v. Lewis*, 174 F.3d 987, 991-92 (9th Cir. 1999);
17 *Elliott*, 25 F.3d at 802. It is federal law, however, that determines when a cause of action
18 accrues and the statute of limitations begins to run in a § 1983 action. *Wallace v. Kato*, 549 U.S.
19 384, 388 (2007); *Elliott*, 25 F.3d at 801-02. Under federal law, a claim generally accrues when
20 the plaintiff knows or has reason to know of the injury which is the basis of the action. *See*
21 *TwoRivers*, 174 F.3d at 991-92; *Elliott*, 25 F.3d at 802. The statute of limitations period
22 generally begins when a plaintiff has knowledge of the "critical facts" of his injury, which are
23 "that he has been hurt and who has inflicted the injury." *United States v. Kubrick*, 444 U.S. 111,
24 122 (1979). Although the statute of limitations is an affirmative defense that normally may not
25 be raised by the court sua sponte, it may be grounds for sua sponte dismissal of an *in forma*
26 *pauperis* complaint where the defense is complete and obvious from the face of the pleadings
27 or the court's own records. *See Franklin v. Murphy*, 745 F.2d 1221, 1228-30 (9th Cir. 1984).
28 That is the situation here with regard to the claims against the doctors at CSP - Solano: the

United States District Court
For the Northern District of California

defense appears complete and obvious from the face of the complaint because this action was filed more than fourteen years after the acts and omissions at CSP - Solano occurred.

Incarceration of the plaintiff is a disability that may toll the statute for a maximum of two years, but only for a plaintiff who is in prison "for a term less than for life." *See* Cal. Civ. Proc. Code § 352.1. Thus, an inmate serving other than life without parole or under a death sentence has four years to bring a § 1983 claim for damages in California, i.e., the regular two year period under section 335.1 plus two years during which accrual was postponed due to the disability of imprisonment. *See Martinez v. Gomez*, 137 F.3d 1124, 1125-26 (9th Cir. 1998) (prisoner serving life sentence with the possibility of parole is entitled to § 352.1 tolling); *Grasso v. McDonough Power Equip.*, 264 Cal. App. 2d 597, 601 (1968). If Diaz is serving a sentence of life *without* the possibility of parole, he would not receive tolling under § 352.1; if he is serving any other sentence, he would receive two years of tolling under § 352.1 for his claims for damages and would have four years to file his complaint.

The limitations period may be subject to equitable tolling. Under California law, equitable tolling "'reliev[es] plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage.'" *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (quoting *Addison v. California*, 21 Cal. 3d 313, 317 (1978)). Thus, in an appropriate case, the statute of limitations might be tolled for time spent pursuing a remedy in another forum before filing the claim in federal court.

The claims against defendants Jordan, Bunton and Rosenthal appear on the face of the complaint to be time-barred because the acts and omissions giving rise to the claims against them occurred in or about January through June 1998. Defendants Jordan, Bunton and Rosenthal allegedly were involved with a blood test done in January 1998 at CSP - Solano to determine whether Diaz had HIV and hepatitis, allegedly failed to inform him of any positive results, and allegedly failed to treat him in the ensuing six months. The complaint was filed more than fourteen years after the claims against these defendants accrued if one uses the date of the alleged wrongdoing as the date of accrual of the claims. Using the date of discovery as the

7

accrual date does not help Diaz because the discovery date also was more than six years before the complaint was filed. Diaz alleged that he was tested again in 2006 for HIV and hepatitis and was informed that he had hepatitis C, *see* Complaint, ¶ 26, a condition that he contends he had when tested in 1998, *id.* at ¶ 27. It thus appears that no later than 2006, Diaz would have known or should have known that he had hepatitis since 1998 (if he in fact did have it in 1998).[1] *Cf. Lawrence v. Berry*, 2013 WL 602511 (9th Cir. 2013) (citing *Knox v. Davis*, 260 F.3d 1009, 1012-13 (9th Cir. 2001) (*en banc*) (continuing impact from past violations does not cause a claim to accrue anew)).

Diaz will be required to file a response to this order, showing cause why the claims against defendants Jordan, Bunton and Rosenthal should not be dismissed as time-barred. Of course, Diaz is not limited to arguing only equitable tolling – he may submit any argument he has to show that the statute of limitations does not bar his claims against these three defendants. His response should be labeled as a "Response to Order To Show Cause" and must be filed no later than **April 12, 2013**. If he does not file a response or if his response does not adequately explain why his claims against these three defendants are not untimely, these three defendants will be dismissed from this action. Regardless of what happens with these three defendants, there is no reason not to move forward with the Pelican Bay defendants at this time, and service of process will be ordered as to them.

## CONCLUSION

1. The claims against defendants Jordan, Bunton and Rosenthal appear to be time-barred. Plaintiff must file a written response showing cause why the claims against these defendants should not be dismissed as barred by the statute of limitations. Plaintiff's response

---

[1] Many other acts and omissions alleged in the complaint occurred more than four years before the filing of the complaint. As to the acts and omissions at Pelican Bay, the statute of limitations defense is not obvious from the face of the complaint so the court will not require Diaz to show cause why those claims should not be dismissed. This is not a ruling that the claims against the Pelican Bay defendants are timely, but simply that there is not enough in the record to show that they are not timely. Defendants are free to raise the statute of limitations bar in a dispositive motion.

8

must be filed no later than **April 12, 2013**. Failure to file the response by the deadline will result in the dismissal of these three defendants.

2. The complaint, liberally construed, states a cognizable § 1983 claim against defendants Sayre, Rowe, Thomas, Risenhoover, Wahidullah, Williams, Scott, Tileston, and Foston for deliberate indifference to plaintiff's serious medical needs.

3. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the complaint and a copy of all the documents in the case file upon the following defendants, the first six of whom apparently work in the medical department at Pelican Bay State Prison:

- Dr. Michael Sayre
- Dr. Linda Rowe
- Dr. L. Thomas
- Sue Risenhoover
- Dr. Wahidullah
- Dr. Claire Williams
- M. Scott (classification staff representative at Pelican Bay)
- C. Tileston (CDCR inmate appeals office in Sacramento)
- D. Foston (CDCR inmate appeals office in Sacramento)

4. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

a. No later than **June 7, 2013**, defendants must file and serve a motion for summary judgment or other dispositive motion. If defendants are of the opinion that this case cannot be resolved by summary judgment, defendants must so inform the court prior to the date the motion is due. If defendants file a motion for summary judgment, defendants must provide to plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012). If defendants file a motion to dismiss for non-exhaustion of administrative remedies, defendants must provide to plaintiff a notice regarding motions to dismiss for non-exhaustion procedures at the time they file such a motion. *See Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012).

b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **July 5, 2013**. Plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this

9

order as he prepares his opposition to any motion for summary judgment. Plaintiff also must bear in mind the notice and warning regarding motions to dismiss for non-exhaustion provided later in this order as he prepares his opposition to any motion to dismiss.

        c.      If defendants wish to file a reply brief, the reply brief must be filed and served no later than **July 19, 2013**.

    5.      Plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment and motions to dismiss for non-exhaustion of administrative remedies:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. . . . Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998).

> The defendants may file a motion to dismiss for failure to exhaust administrative remedies instead of, or in addition to, a motion for summary judgment. A motion to dismiss for failure to exhaust administrative remedies is similar to a motion for summary judgment in that the court will consider materials beyond the pleadings. You have the right to present any evidence you may have which tends to show that you did exhaust your administrative remedies or were excused from doing so. The evidence may be in the form of declarations (that is, statements of fact signed under penalty of perjury) or authenticated documents (that is, documents accompanied by a declaration showing where they came from and why they are authentic), or discovery documents such as answers to interrogatories or depositions. In considering a motion to dismiss for failure to exhaust, the court can decide disputed issues of fact with regard to this portion of the case. If defendants file a motion to dismiss and it is granted, your case will be dismissed and there will be no trial. *See generally Stratton v. Buck*, 697 F.3d at 1008-09.

    6.      All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to

defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

7.   Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

8.   Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

9.   Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to this court for consideration in this case.

IT IS SO ORDERED.

Dated: March 6, 2013

_____
SUSAN ILLSTON
United States District Judge